IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

DEANA L. JONES                                                                                          PLAINTIFF

v.                                               No. 1:06CV00043 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                                 DEFENDANT

## OPINION AND ORDER

Deanna Jones brings this action pursuant to § 205(g) of the Social Security Act, for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1382c. For the following reasons, the decision of the Commissioner is affirmed.

## I.

Deana Jones was born on April 27, 1982. She filed an application for supplemental security income on July 8, 2003, claiming to have been disabled since September 30, 1996, due to mental impairments. Specifically, Jones claims she is unable to work because of a borderline range of intellectual functioning, depression, and an inability to be around other people. Over the years, Jones has undergone several intellectual and psychiatric tests. She has been found to have a full scale IQ of 70 in 1996 and 77 in 2003, with no significant limitations in adaptive functioning. Transcript of Record at 79, 142. While in school, her standardized test scores were consistently below average, although she did occasionally score above average in particular areas such as social science, spelling, and rhetorical skills. *Id.* at 82-89. She has also been diagnosed and treated for depression on multiple occasions. *Id.* at 80, 92, 108-09, 174-76. Both she and her sister, Lisa Lane, testified that she does not like to be around a lot of people because it makes her nervous, and she feels as if they are staring at her. *Id.* at 227, 231-32.

According to Jones's testimony, during an average day, she gets up at 7:00 a.m. and drives her son to Head Start by 8:30. *Id.* at 229. She returns home and "does whatever needs to be done" before picking her son back up at 1:30 p.m. *Id.* She testified that if someone needs to go grocery shopping or take her son to the doctor, she will do it. *Id.* at 229-30. She is the primary caregiver of her son, and she takes care of her own personal needs as well. *Id.* at 230. She does not socialize much, indicating that the reason is a lack of time "between . . . taking care of [her] son and getting . . . everything done." *Id.* at 231.

Upon conducting the required five-step analysis in determining whether Jones is eligible for supplemental security income, 20 C.F.R. §§ 404.1520, 416.920 (2006), *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003), the Administrative Law Judge determined that Jones has no history of past relevant work activity; that Jones's combination of impairments – severe borderline intellectual functioning and dysthymia – are severe within the meaning of the Social Security Regulations; and that these impairments do not meet a listed requirement. The ALJ also found that Jones has the residual functional capacity for unskilled work of a routine repetitive nature, with only superficial interpersonal contact, and no direct dealing with the public. Transcript of Record at 19. The ALJ concluded, based on vocational expert testimony, that significant numbers of jobs do exist in the national economy that Jones could be expected to perform, specifically hand packer and production assembler, considering her age, education, past work experience, and residual functional capacity. *Id.*; *see also id.* at 233-35. Thus, on April 28, 2006, the ALJ found that Jones was not eligible for supplemental security income under the Act. Jones filed a request for review, which the Appeals Council denied, and the ALJ's decision thereby became the final decision of the Social Security Commissioner. Jones now seeks review in this Court.

**II.**

This Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g) (2000). This review function is limited, namely "'to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (quoting *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* This Court "'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id.* (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)). Nevertheless, "[t]he review [the Court] undertake[s] is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, [the Court] also take[s] into account whatever in the record fairly detracts from the decision." *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998).

**III.**

When the claimant is limited by a non-exertional impairment, "the ALJ is required to utilize testimony of a vocational expert." *Draper v. Barnhart*, 425 F.3d 1127, 1132 (8th Cir. 2005). Further, the "hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole," *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005), including borderline intellectual functioning, *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999). "[T]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

Jones contends that the Court should reverse the Commissioner's decision and remand the case for proper evaluation of her claim because the ALJ provided the vocational expert with a defective hypothetical. The hypothetical was stated by the ALJ as follows:

> I want you to assume that you're dealing with an individual of the same age as the claimant, same educational background, and lack of work experience. Further assume that the individual does not have any exertional limitations but is limited to simple, unskilled work of a routine, repetitive nature. It would need to involve superficial interpersonal contact, and no direct dealing with the public.

Transcript of Record at 233.

Jones claims that the hypothetical was defective in two ways. First, "the hypothetical contains no explicit reference to Jones's borderline intellectual functioning." While the Eighth Circuit has repeatedly held that borderline intellectual functioning is a significant non-exertional impairment that must be considered by a vocational expert, the law does not require an "explicit reference to it." As cited in Jones's brief, a properly phrased hypothetical question is one that "captures the concrete consequences of a claimant's deficiencies," not one that contains specific references to the claimant's medical conditions. In fact, the Eighth Circuit has ruled that a hypothetical that assumes that a claimant can do "simple, routine, repetitive work . . . adequately accounts for the finding of borderline intellectual functioning." *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Thus, by asking the vocational expert to consider an individual who was limited to "simple, unskilled work of a routine, repetitive nature," the ALJ posed a hypothetical to the vocational expert that properly accounted for Jones's borderline intellectual functioning.

The cases cited by Jones in support of her position do not apply here. *See Grissom*, 416 F.3d at 836-38 (reversing where the hypothetical had only limited the question to those who could not perform "highly-complex job tasks," concluding that the "ALJ determined [the claimant] was not disabled without a vocational expert clearly and directly assessing [the claimant's] residual

4

functional capacity in light of her borderline intellectual functioning" among other impairments); *Holz*, 191 F.3d at 947 (reversing because the ALJ relied on the Medical-Vocational Guidelines, rather than receiving testimony from a vocational expert, to determine that the claimant was not disabled by a non-exertional impairment); *Foreman v. Callahan*, 122 F.3d 24, 25-26 (8th Cir. 1997) (same); *Lucy v. Chater*, 113 F.3d 905, 908-09 (8th Cir. 1997) (same); *Pickney v. Chater*, 96 F.3d 294, 296-97 (8th Cir. 1996) (reversing because the "ALJ did not merely fail to mention the mental impairment, he expressly directed the vocational expert to assume that [the claimant] had no mental impairments"); *Gude v. Sullivan*, 956 F.2d 791, 796 (8th Cir. 1992) (noting that the ALJ improperly relied on the Medical-Vocational Guidelines in a decision awarding the claimant benefits directly). Here, the ALJ properly relied on the testimony of a vocational expert, rather than the Medical-Vocational Guidelines, to determine whether Jones's non-exertional impairments prevent her from working. Furthermore, he presented a hypothetical to the vocational expert in a manner that the Eighth Circuit has recognized properly accounts for borderline intellectual functioning. This aspect of the hypothetical is not defective.

Second, Jones contends that the ALJ's limitation to work having "superficial interpersonal contact" and no "direct dealing with the public" does not adequately describe the consequences of either Jones's limited intelligence or other mental impairments. However, substantial evidence supports the ALJ's determination of Jones's residual functional capacity as well as the hypothetical question at the hearing.

In October 2003, state agency medical consultant Brad Williams, Ph.D., performed a mental residual functional capacity assessment of Jones. Transcript of Record at 144-46. He found that she was markedly limited in no residual functional capacity categories and that she was moderately limited in only six out of twenty categories. *Id.* at 144-45. These categories included the ability to:

5

(1) "understand and remember detailed instructions," (2) "carry out detailed instructions," (3) "maintain attention and concentration for extended periods," (4) "complete a normal workday and workweek" without psychologically based interruptions, (5) "accept instructions and respond appropriately to criticism from supervisors," and (6) "set realistic goals or make plans independently of others." *Id.* He found she was not significantly limited in her ability, among other things, to "interact appropriately with the general public" or to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* at 145.

In December 2003, Jones underwent a mental status and adaptive functioning evaluation performed by Charles Spellman, Ph.D. Dr. Spellman found that Jones "gets along fine with others. There was no evidence of unusual passivity, dependency, aggression, impulsiveness, or withdrawal." *Id.* at 142. She reported to Dr. Spellman that she "has friends and they get together and do mother stuff," like watch each other's kids and go shopping together. *Id.* She further reported that she does her own housework, prepares meals, goes shopping, manages her own money, drives a vehicle, runs errands, and does the "usual type of activities that young women do." *Id.* Dr. Spellman concluded that Jones had good concentration, persistence, and pace, with no significant limitations in cognition. *Id.*

In February and March 2005, Witold P. Czerwinski, M.D., performed a mental status examination of Jones. Czerwinski found that her intelligence was "close to average/normal." *Id.* at 176. He also found that her memory and concentration were good, and that she was pleasant, cooperative, and polite. *Id.* Finally, in August 2005, she reported to Dr. Herbert H. Price, M.D., that she was planning on going to beauty school. *Id.* at 218.

According to Jones's own testimony at the administrative hearing, she stated that she "can't get along with people in the public"; "whenever I'm around a lot of people . . . I just get really

nervous." *Id.* at 226-27.  When asked whether there was anything else that interfered with her working eight hours a day, five days a week, Jones replied, "Not really, I don't think." *Id.* at 227-28. When asked whether she could clean ten hotel rooms per day, Jones stated that if she could stay in one spot and clean, she would be able to concentrate, but that if she were required to move around to different rooms it would be difficult for her to keep her concentration. *Id.*

Here, the ALJ limited Jones's work to situations where she would not be around "a lot of people" – with no direct contact with the public and only superficial interpersonal contact otherwise – and where she would be able to "stay in one spot" and concentrate on her job.  Furthermore, substantial evidence, including both the professional and medical conclusions of Drs. Williams, Spellman, and Czerwinski as well as Jones's common activities as reported to the doctors by Jones, supports the ALJ's finding that Jones has the residual functional capacity for unskilled work of a routine, repetitive nature, with only superficial interpersonal contact, and no direct dealing with the public.  The ALJ's hypothetical was not defective.

## CONCLUSION

The ALJ properly relied upon vocational expert testimony, posing a hypothetical that appropriately accounted for Jones's borderline intellectual functioning and that was otherwise supported by substantial evidence.  Accordingly, the decision of the Commissioner of the Social Security Administration is affirmed.

IT IS SO ORDERED this 26th day of September, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE